# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AIVARS LEMBERGS** | ) |
| Ventspils City Council, | ) |
| Juras iela 36, | ) |
| Ventspils, Latvia LV-3601 | ) |
| | ) CIV. NO. 20-2196 |
| *Plaintiff,* | ) |
| | ) **COMPLAINT** |
| v. | ) |
| | ) **ECF** |
| **ANDREA M. GACKI** | ) |
| **in her official capacity as** | ) |
| **Director of the** | ) |
| **United States Department of the Treasury** | ) |
| **Office of Foreign Assets Control** | ) |
| 1500 Pennsylvania Avenue, NW | ) |
| Freedman's Bank Building | ) |
| Washington, D.C. 20220 | ) |
| | ) |
| and | ) |
| | ) |
| **THE UNITED STATES DEPARTMENT** | ) |
| **OF THE TREASURY, OFFICE OF FOREIGN** | ) |
| **ASSETS CONTROL** | ) |
| 1500 Pennsylvania Avenue, NW | ) |
| Freedman's Bank Building | ) |
| Washington, D.C. 20220 | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Mayor Aivars Lembergs ("Mayor Lembergs") brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Director, Andrea M. Gacki, in her official capacity, and in support of this complaint alleges:

1.      Defendants have unlawfully imposed punitive economic sanctions pursuant to Executive Order ("E.O.") 13818 on Mayor Lembergs on the basis of unfounded, libelous allegations. These allegations—driven by Mayor Lembergs' political rivals in Latvia—cannot be meaningfully contested given that the press release announcing the designation, which constitutes the sole notice provided as to the basis of OFAC's action, contains only conclusory allegations of unclear relevance to the factual basis for that designation.

2.      Defendants' designation of Mayor Lembergs followed a visit to the United States by Latvia's Vice Prime Minister and Minister of Justice Janis Bordans—a leader in a competing political party in Latvia. According to Bordans, the sanctions imposed on Mayor Lembergs arose from his own discussions with the U.S. government, including Defendant OFAC. *See* Latvijas Radio 1, Jānis Bordāns: Lemberga iekļaušana sankciju sarakstā ilgtermiņā dos pozitīvu rezultātu (Dec. 16, 2019), https://lr1.lsm.lv/lv/raksts/labriit/janis-bordans-lemberga-ieklausana-sankciju-saraksta-ilgtermina-d.a124580. Other high-level Latvian officials have also publicly paraded their influence over OFAC's decision to designate Mayor Lembergs, which they undertook in order to tarnish his local reputation and gain political advantage in Latvia. *Id.*

3.      Notwithstanding the public admissions of certain members of the Latvian government that they influenced OFAC's designation authorities to their own advantage, Defendants' press release states that Mayor Lembergs was designated "for being a foreign person who is a current or former government official responsible for or complicit in, or directly or indirectly engaged in, corruption . . ." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Sanctions Corruption and Material Support Networks (Dec. 9, 2019). However, the allegations of the conduct identified in the press release—in addition to being false— have tenuous, if any, relationship to E.O. 13818's designation criteria.

4.     Further, even if the false allegations of Defendants' press release did identify findings that could support a designation under E.O. 13818—they do not—those findings purport to identify conduct that predates the issuance of E.O. 13818 and fails to allege that such conduct is continuous in nature. In short, Defendants have unlawfully rendered sanctionable conduct that was allegedly engaged in and since ceased prior to the date on which the conduct became sanctionable as a matter of law. An agency's reliance on such findings in this manner violates the basic principle of fair notice embedded in due process jurisprudence.

5.     Further, given the clear inadequacy of the press release to allege conduct meeting E.O. 13818's designation criteria, Defendants have failed to provide actual notice to Mayor Lembergs of the reasons for his designation which he could rebut in an administrative delisting process. Instead, OFAC's purported reasons for the designation leave Mayor Lembergs guessing as to whether the libelous claims leveled in the press release constitute "constructive" notice of the basis for his designation. Absent such notice, Defendants will continue to unlawfully bar Mayor Lembergs from having a meaningful opportunity to contest his designation.

6.     For these reasons, Mayor Lembergs requests that this Court undo Defendants' unlawful action and grant the requested relief.

## JURISDICTION AND VENUE

7.     This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*., the Global Magnitsky Human Rights Accountability Act, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

8.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Fed. R. Civ. P. 57. This Court may grant injunctive relief pursuant to Fed. R. Civ. P. 65.

9.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside. *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

10.     Mayor Lembergs is and was at all times relevant to this complaint a citizen of Latvia.

11.     Mayor Lembergs serves as the Mayor of Ventspils—one of Latvia's largest cities— and was a member of the Executive Committee of the Latvian Olympics Committee at the time of his designation by OFAC. Mayor Lembergs also serves as Chairman of the Board for Latvijai un Ventspilij, a Latvian political party.

12.     Mayor Lembergs' high-level public service in Latvia has been well-recognized by the Latvian people. For example, Mayor Lembergs was awarded the 3rd grade Order of the Three Stars—the highest state decoration in Latvia—and the Commemorative Medal for Participants of the Barricades, which was established to honor defenders of Latvia's independence from the Soviet Union in 1991. Mayor Lembergs has also received awards from Latvia's Ministry of Culture for his efforts at developing and enlivening Ventspils' libraries, museums, and cultural institutions.

13.     OFAC is a federal administrative agency of the United States Department of the Treasury and is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington, D.C. 20220. OFAC is responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 13818 and regulating dealings with them under those authorities via 31 C.F.R. Part 501, the "Reporting, Procedures, and Penalties Regulations," and 31 C.F.R. Part

583, the "Global Magnitsky Sanctions Regulations." OFAC was responsible for designating Mayor Lembergs pursuant to E.O. 13818.

14.     Defendant Andrea M. Gacki is the Director of OFAC. In this role, Ms. Gacki was responsible for designating Mayor Lembergs pursuant to E.O. 13818.

## FACTUAL ALLEGATIONS

### A.     Executive Order 13818

15.     On December 20, 2017, President Donald J. Trump issued E.O. 13818, "Blocking the Property of Persons Involved in Serious Human Rights Abuse or Corruption," pursuant to his authority under IEEPA and the Global Magnitsky Human Rights Accountability Act.

16.     E.O. 13818 blocks the property and interests in property of persons determined by the Secretary of the Treasury to be a current or former government official, or a person acting for or on behalf of such an official, who is responsible for or complicit in, or has directly or indirectly engaged in corruption, including the misappropriation of state assets, the expropriation of private assets for personal gain, corruption related to government contracts or the extraction of natural resources, or bribery. Exec. Order 13818, § 1(a)(ii)(B)(1).

17.     E.O. 13818 also suspends the entry of persons determined to meet one or more of the criteria for designation into the United States as immigrant or non-immigrants. Exec. Order 13818, § 2.

### B.     Mayor Lembergs' Designation Under Executive Order 13818

18.     On December 9, 2019, OFAC designated Mayor Lembergs under E.O. 13818 for being a foreign person who is a current or former government official, or a person acting for or on behalf of such official, who is responsible for or complicit in, or has directly or indirectly engaged in, corruption, including the misappropriation of state assets, the expropriation of private assets for

personal gain, corruption related to contracts or the extraction of natural resources, or bribery. NOTICE, U.S. Dep't of Treasury, Office of Foreign Assets Control, 84 FED. REG. 68014 (Dec. 12, 2019).

19.     OFAC issued a press release simultaneous with its designation of Mayor Lembergs. According to this press release, Mayor Lembergs "has been repeatedly accused of money laundering, bribery, and abuse of office" since he became Mayor of Ventspils, Latvia in 1988. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Sanctions Corruption and Material Support Networks (Dec. 9, 2019). OFAC's press release alleges that "Lembergs controls entities through political parties and corrupt politicians, and systematically exploits those entities and individuals for his own economic gain." *Id*. In addition, according to OFAC's press release, Mayor Lembergs "has used his influence over leadership of political parties to shape governmental personnel and place certain government officials in position, as well as to obstruct other government officials from obtaining leadership positions." *Id*. OFAC's press release further alleges that Mayor Lembergs "has leveraged and corrupted law enforcement officials to protect his interests and subvert politicians whom he otherwise was unable to control." *Id*.

20.     OFAC's press release does not state whether these allegations comprise the entire factual basis for his designation and underpin OFAC's determination that Mayor Lembergs meets the criteria for designation under E.O. 13818. Nor does OFAC identify whether any of the alleged conduct at issue post-dates the issuance of E.O. 13818—i.e., whether it was sanctionable at the time of its purported engagement.

21.     OFAC's press release further fails to identify which entities Mayor Lembergs allegedly "controls" and "systematically exploits" through political parties and corrupt politicians;

which political parties and corrupt politicians Mayor Lembergs engages in that alleged conduct through; nor how Mayor Lembergs could co-opt those parties to do so. *Id.*

22.    The press release is also absent of any facts identifying who constitutes "leadership" at the unidentified political parties that Mayor Lembergs allegedly influences to "shape government personnel." *Id.* There are no facts provided by Defendants' press release to identify what the nature of this influence is, how it is carried out, who is the "leadership" that has been allegedly influenced, nor who has been placed in government positions or denied government positions as a result of the exercise of any such influence. *Id.* Indeed, the press release does not even identify what government is being referred to—e.g., Ventspils government, the Latvian government, etc. *Id.*

23.    In claiming that he "has leveraged and corrupted law enforcement officials to protect his interests and subvert politicians…," OFAC's press release fails to identify which law enforcement officials and from which jurisdiction Mayor Lembergs has leveraged, and which politicians and from where have been subverted. Further, the press release does not state how Mayor Lembergs "leveraged" law enforcement officials, nor how politicians have been "subverted." *Id.*

24.    By virtue of this designation, all of Mayor Lembergs' property and interests in property in the United States or within the possession or control of U.S. persons are blocked, and U.S. persons are generally prohibited from engaging in transactions with him. In addition, Mayor Lembergs is suspended from entry into the United States due to his designation.

**C.    Harm to Mayor Lembergs**

25.    Defendants' action has been devastating to Mayor Lembergs, and has had discrete punitive legal consequences. Foremost amongst these consequences are the blocking of Mayor

Lembergs' property and interests in property in the United States, and the rendering of Mayor Lembergs civilly or criminally liable if he were to cause a dealing in such blocked property.

26.     Defendants' imposition of sanctions has also had serious practical consequences for Mayor Lembergs—not least of which is the closure of all of his bank accounts in Latvia and the refusal of financial institutions in Latvia and abroad to provide their services to him. Moreover, Defendants' decision to designate entities over which Mayor Lembergs is alleged by OFAC to exercise ownership or control has permanently dissociated Mayor Lembergs of his economic interests in these entities. Finally, Defendants' action and its accompanying libelous allegations of financial misconduct have tarnished Mayor Lembergs' reputation, both internationally and domestically, and undermined his political standing in Latvia.

i.     Legal Harm

27.     By virtue of his designation, all of Mayor Lembergs' property and interests in property in the United States or within the possession or control of U.S. persons are blocked, and U.S. persons are generally prohibited from engaging in transactions with him. In addition, Mayor Lembergs is prohibited from causing a U.S. person to violate the prohibitions of E.O. 13818 or the Global Magnitsky Sanctions Regulations, 31 C.F.R. Part 583, including by causing a U.S. person or entity to deal in property in which he holds an interest. Were he to do so, Mayor Lembergs could be held civilly or criminally liable under U.S. law.

28.     Mayor Lembergs is also suspended from entry into the United States as a result of his designation under E.O. 13818.

ii.     Sanctioning of Mayor Lembergs' Purported Companies

29.     Besides designating Mayor Lembergs himself, OFAC also designated four Latvian-based entities alleged to be owned or controlled by Mayor Lembergs: Ventspils Freeport Authority;

Ventspils Attistibas Agentura; Biznesa Attistibas Asociacija; and Latvijas Tranzita Biznesa Asociacija. Each of these entities is, or was at the time of designation, subject to blocking sanctions, which require all of their property and interests in property in the United States or within the possession or control of a U.S. person to be "frozen."

30.     Mayor Lembergs exercises neither ownership nor control with respect to these entities, which are not companies or corporations but rather state-owned freeport administrations (Ventspils Free Port Authority) or non-governmental associations (Ventspils Attistibas Agentura; Biznesa Attistibas Asociacija; and Latvijas Tranzita Biznesa Asociacija). Mayor Lembergs did, however, hold paid positions in each of the entities and was socially engaged with them. OFAC's designation action, however, ended Mayor Lembergs' involvement with these associations.

31.     Directly resulting from the designation, Mayor Lembergs no longer receives income from any of the four entities—Ventspils Freeport Authority; Ventspils Attistibas Agentura; Biznesa Attistibas Asociacija; and Latvijas Tranzita Biznesa Asociacija—as these entities have effectively ceased to operate and banks have refused to provide them with financial services.

32.     Mayor Lembergs was also removed from his position as board member of the Ventspils Freeport Authority. As a result of the Ventspils Freeport Authority designation, Latvia's Parliament passed amendments to the Latvian Law on Freeport Authorities under which the functions of Ventspils Freeport Authority—which held special status as a public entity subject to governance by the Latvian state and Ventspils municipality—are being transferred to Ventas Osta, a state-owned joint stock company. This move was purportedly undertaken in order for Ventspils Freeport Authority's designation under E.O. 13818 to be rescinded but, in turn, was leveraged by the Latvian government to achieve a distinct goal—i.e., to eliminate local municipalities' role in the governance of free ports (similar measures had been simultaneously applied to Riga Freeport

Authority and similar measures with respect to Liepaja Freeport Authority are under consideration) so that the central government can assert exclusive control over those ports.

33.     Ventspils Attistibas Agentura is a non-governmental association comprised of private companies, public sector organizations, and other legal and natural persons interested in promoting the economic and social interests of the city of Ventspils.

34.     As a result of its designation, Ventspils Attistibas Agentura terminated all employment relationships as its bank accounts were blocked by financial institutions and the entity was unable to remit payments. This included termination of Mayor Lembergs' income from his position with Ventspils Attistibas Agentura.

35.     Biznesa Attistibas Asociacija is a non-governmental association based in Ventspils. As a direct result of its designation, Biznesa Attistibas Asociacija terminated Mayor Lembergs' income from his position with the association.

36.     Latvijas Tranzita Biznesa Asociacija is a non-governmental association whose purpose is to promote the interests of its members—most of whom are involved in the transit industry—within Latvia and the broader European Union. As a direct result of its designation, Latvijas Tranzita Biznesa Asociacija terminated Mayor Lembergs' position as Chairman of its Board—a position that Mayor Lembergs had held since August 1994.

iii.     <u>Personal Harm</u>

37.     OFAC's unlawful action has had significant personal harm to Mayor Lembergs, including financial, social, and reputational harm. This includes the closure of financial accounts held by Mayor Lembergs at Latvian banks; termination from several positions (or loss of income from these positions) at political and non-governmental associations; difficulties procuring basic services in the aftermath of his designation; and the prohibition on his travel to the United States.

38.    On December 12, 2019, Latvia's Financial and Capital Markets Commission (the "FCMC") sent a letter to Latvia's financial institutions informing them of Mayor Lembergs' designation by U.S. authorities and the potential legal consequences of their continued provision of financial services to Mayor Lembergs. Accordingly, the FCMC declared that Latvia's financial institutions would be limited to providing only those financial services to Mayor Lembergs that are necessary to supporting his primary needs—i.e., for payment of food and other living expenses, etc. Press Release, Financial Institutions Shall Ensure Application of the Sanctions Imposed by the USA in Accordance with the Purposes Thereof, FCMC (Dec. 12, 2019), available at https://www.fktk.lv/en/news/press-releases/fcmc-financial-institutions-shall-ensure-application-of-the-sanctions-imposed-by-the-usa-in-accordance-with-the-purposes-thereof/.

39.    In response to his designation by OFAC, the following financial institutions terminated accounts held by or on behalf of Mayor Lembergs: AS Privat Bank; Luminor Bank AS—Latvia Branch; and Swedbank.

40.    No financial institution—either in Latvia or abroad—has been willing to open an account for or on behalf of Mayor Lembergs. As a result, all funds that Mayor Lembergs held in financial accounts at the time of his designation are frozen, and Mayor Lembergs has no access to these funds at the current time. This is the direct result of Defendants' unlawful actions, as banks are operating out of fear of the sanctions risk associated with maintaining accounts or providing financial services to Mayor Lembergs following his designation by OFAC.

41.    The complete shut-off of basic financial services to Mayor Lembergs has had significant consequences on his ability to procure basic services to maintain his livelihood. For instance, because no bank is willing to provide financial services to Mayor Lembergs, all payments must be made in cash, including for basic municipal services; medical services; legal services; and

tuition payment for his children's education. Cash payments, however, are impractical given the widespread use of electronic payments in Latvia and the lack of cashier facilities in many institutions or places of business.

42.     Mayor Lembergs has also been forced out of positions that he has long held, including those identified above in certain political and non-governmental associations. His termination from these positions stems directly from Defendants' action, as Mayor Lembergs' continued involvement with the entities has led to the imposition of sanctions on them.

43.     Mayor Lembergs' termination from positions at the Ventspils Freeport Authority; the Latvijas Tranzita Biznesa Asociacija; and the Ventspils Attistibas Agentura has led to significant loss of income, as Mayor Lembergs held paid positions at each of these entities. Total annual lost income from his termination from these positions equals more than 164,000 Euros.

44.     Mayor Lembergs is also barred from entering the United States. Since 2008, Mayor Lembergs has traveled to the United States on multiple occasions pursuant to the Visa Waiver Program, having obtained a valid Electronic System for Travel Authorization ("ESTA"). As a direct result of his designation, Mayor Lembergs is suspended from entry into the United States and can no longer make use of the Visa Waiver Program to enter the United States for tourism or business purposes.

              iv.     Reputational and Other Harms

45.     Mayor Lembergs has also been subject to severe reputational harm, as international and local media and local politicians spread OFAC's libelous allegations to tarnish Mayor Lembergs' name and reputation in Latvia and abroad. These attacks are intended to diminish Mayor Lembergs' political standing in Latvia. This harm arises directly from OFAC's publication

of spurious allegations of corruption that bear no resemblance to the manner in which Mayor Lembergs has carried out his public service to the Latvian people.

46. Mayor Lembergs' immediate family has also suffered grave consequences as a result of his designation under E.O. 13818. For example, Mayor Lembergs' mother, wife, and children have themselves become the subject of international and local scrutiny, as they are wrongly being tied to the unfounded claims made by OFAC against Mayor Lembergs. The same allegations underlying OFAC's action have also been leveraged by the United States Department of State to subject Mayor Lembergs' immediate family members to a travel ban under § 7031(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act of 2019. Press Release, U.S. Dep't of State, Public Designations Due to Significant Corruption of Latvian and Cambodian Officials (Dec. 10, 2019).

47. Mayor Lembergs' mother, wife, and children have also been subject to the blocking of their financial accounts held at Latvian financial institutions. For instance, Mayor Lembergs' 95-year old mother had her bank account at Citadeles Banka and Latvijas Pasts (Latvian Post) terminated following Lembergs' designation by OFAC; a savings account at Swedbank held for Mayor Lembergs' son, Arturs—who is five years old—has been frozen out of concern about the sanctions risk associated with maintaining and servicing the account; Mayor Lembergs' wife's private pension savings account at Swedbank has also been frozen as a result of Defendants' unlawful actions; and Mayor Lembergs' sister's personal account at Latvijas Pasts (Latvian Post) was terminated as a result of the OFAC designation.

48. Immediately following Mayor Lembergs' designation and as its direct result, the Riga Free Port Authority terminated Mayor Lembergs' wife employment agreement. This caused a significant loss of income for Mayor Lembergs' wife and family.

## LEGAL CLAIMS

### COUNT I

DEFENDANTS' DESIGNATION OF MAYOR LEMBERGS UNDER E.O. 13818
CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE
ADMINISTRATIVE PROCEDURE ACT

49.     Mayor Lembergs re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

50.     Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

51.     Defendants' designation of Mayor Lembergs under E.O. 13818 and its findings and conclusions in support of this designation are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.

### COUNT II

DEFENDANTS' DESIGNATION OF MAYOR LEMBERGS UNDER E.O. 13818 VIOLATES
FAIR NOTICE REQUIREMENTS UNDER THE FIFTH AMENDMENT TO THE U.S.
CONSTITUTION

52.     Mayor Lembergs re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

53.     Under the Due Process Clause of the Fifth Amendment, Defendants must provide fair notice of conduct that is prohibited or otherwise sanctionable or that is required by law. Failure to provide fair notice merits setting aside the penalty or sanction imposed.

54.     Defendants failed to provide Mayor Lembergs with fair notice of conduct that is prohibited or otherwise sanctionable in violation of the Fifth Amendment's Due Process Clause,

14

as Mayor Lembergs was designated for purported conduct that took place prior to the issuance of

E.O. 13818 and its designation criteria for which sanctions may be imposed.

### COUNT III

DEFENDANTS' DESIGNATION OF MAYOR LEMBERGS UNDER E.O. 13818 AND
THEIR FAILURE TO ACCORD MAYOR LEMBERGS SUFFICIENT NOTICE OF THE
DESIGNATION VIOLATES HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS

55.     Mayor Lembergs re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

56.     Under the Fifth Amendment to the U.S. Constitution, Mayor Lembergs has a right to adequate post-deprivation notice. Sufficient notice requires Defendants to provide Mayor Lembergs with the reasons for his designation so as to permit him a meaningful opportunity to respond to Defendants' action.

57.     Defendants have not provided sufficient notice for their determination that Mayor Lembergs meets the criteria for designation under E.O. 13818—i.e., that Mayor Lembergs is a foreign person who is a current or former government official, or a person acting for or on behalf of such official, who is responsible for or complicit in, or has directly or indirectly engaged in, corruption, including the misappropriation of state assets, the expropriation of private assets of personal gain, corruption related to contracts or the extraction of natural resources, or bribery.

58.     Defendants have not identified adequate findings of conduct relied upon for their determination that Mayor Lembergs meets the criteria for designation under E.O. 13818 nor have Defendants otherwise disclosed the factual basis for this determination, including OFAC's findings and conclusions in support thereof. Defendants have thus failed to provide Mayor Lembergs with adequate notice of the reasons for his designation and have acted in violation of Mayor Lembergs' due process rights under the Fifth Amendment to the U.S. Constitution.

## COUNT IV

### DEFENDANTS' FAILURE TO PROVIDE NOTICE OF THE BASIS FOR MAYOR LEMBERGS' DESIGNATION UNDER E.O. 13818 VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

59.     Mayor Lembergs re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

60.     Agency action, findings, and conclusions found to be not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

61.     Defendants' designation of Mayor Lembergs under E.O. 13818 and their related determination that Mayor Lembergs meets the criteria for designation is arbitrary, capricious, not in accordance with law, and without observance of procedure required by law in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*., as Defendants failed to provide Mayor Lembergs with adequate notice of the reasons for his designation.

### RELIEF REQUESTED

Wherefore, Mayor Lembergs respectfully requests that this Court:

A.     Issue an order vacating Mayor Lembergs' designation under E.O. 13818;

B.     Order Defendants to rescind Mayor Lembergs' designation under E.O. 13818;

C.     Declare Mayor Lembergs' designation under E.O. 13818 to be unlawful;

D.     Order Defendants to disclose the evidentiary memorandum underlying Mayor Lembergs' designation under E.O. 13818 and all related exhibits;

E.     Order Defendants to produce unclassified summaries of all classified or otherwise privileged information contained in the administrative record;

F.      Grant an award to Mayor Lembergs of his costs and attorneys' fees under the Equal

Access to Justice Act, 28 U.S.C. § 2412 *et seq*., and any other applicable provision

of law; and

G.      Any other and further relief as the Court may deem proper.


Date:   August 11, 2020                                    Respectfully submitted,


                                                           /s/ Erich C. Ferrari
                                                           Erich C. Ferrari, Esq.
                                                           Ferrari & Associates
                                                           1455 Pennsylvania Avenue, NW
                                                           Suite 400
                                                           Washington, D.C. 20004
                                                           Telephone: (202) 280-6370
                                                           Fax: (877) 448-4885
                                                           Email: ferrari@falawpc.com
                                                           D.C. Bar No. 978253

                                                           *ATTORNEY FOR PLAINTIFF*
                                                           *AIVARS LEMBERGS*